IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| ROY NIMIN JACKSON HODGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 321-021 |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Roy Nimin Jackson Hodge appeals the decision of the Acting Commissioner of Social Security ("the Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.     BACKGROUND

Plaintiff applied for DIB and SSI on October 6, 2016, alleging a subsequently amended disability onset date of January 1, 2017. Tr. ("R."), pp. 43, 289-99, 428. Plaintiff was forty-eight years old on his alleged disability onset date and was fifty-two years old at the time the Administrative Law Judge ("ALJ") issued the decision under consideration. R. 55, 314.

Plaintiff claimed he was disabled based on having a learning disability. R. 333. Plaintiff attended school until ninth grade, and prior to his alleged disability, Plaintiff had accrued a work history that included more than ten years preparing dessert at a local restaurant and then frying chicken at a local grocery store, but none of that work qualified as past relevant work under the applicable social security regulations. R. 47, 48, 53, 64-65, 86, 334.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 164-67, 173-83. Plaintiff requested a hearing before an ALJ, (R. 184-91), and the ALJ held a hearing on September 19, 2018. R. 79-97. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel. Id. On January 7, 2019, the ALJ issued an unfavorable decision, in which he determined Plaintiff was "not disabled" under the framework of section 204.00 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. R. 140-53.

Plaintiff then requested that the Appeals Council ("AC") review the ALJ's decision. The AC vacated the January 7, 2019 decision and remanded to the ALJ to resolve two specifically identified issues relating to (1) evaluating the opinion of nontreating source, Dr. Robert Brill, a State Agency psychiatric consultant, and (2) obtaining vocational evidence regarding Plaintiff's nonexertional limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and in adapting of managing oneself. R. 158-63. The remand order directed the ALJ to address the specifically identified issues and "take any further action needed to complete the administrative record and issue a new decision." R. 161. Relevant to the current appeal, the remand order incorrectly stated, (R. 160), the ALJ found Plaintiff had a marked limitation in

2

interacting with others.  Cf. R. 150 ("In interacting with others, the claimant has a *moderate* limitation." (emphasis added)).

On remand, the ALJ held a second hearing on June 11, 2020, at which he heard testimony from Plaintiff, who was represented by counsel, as well as from Mark Leaptrot, a Vocational Expert ("VE").[1]  R. 61-78.  In a second opinion, dated June 24, 2020, the ALJ determined Plaintiff was not disabled.  R. 40-55.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 1, 2017, the amended alleged onset date (20 C.F.R. §§ 404.1571 *et seq*. and 416.971 *et seq*.).

2. The claimant has the following severe impairments:  borderline intellectual functioning (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:  The claimant is limited to performing only one to two-step simple verbal instructions.  His work must not have a literacy requirement.  He cannot work in an environment where he is responsible for mathematical computations.  He is limited to simple, routine, and repetitive tasks.  He should have only occasional contact with supervisors, coworkers, and the public.  He must not work in a high-paced or high-production environment.  His work should have highly limited and infrequent changes to his duties and daily schedule.  The claimant has no past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including truck washer, rug cutter, and box bender (20

---

[1]Because of the COVID-19 pandemic, the second hearing was held via telephone.  R. 43.

      C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, since January 1, 2017, through the date of the ALJ's decision, June 24, 2020 (20 C.F.R. §§ 404.1520(g) 416.920(g)).

R. 45-55.

When the AC denied Plaintiff's request for review of the second ALJ decision, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because, contrary to the ALJ's finding, (1) he has a marked limitation in his ability to maintain concentration, persistence or pace; and (2) he meets or equals Listing 12.05B. See doc. no. 14 ("Pl.'s Br."); doc. no. 16. The Commissioner maintains the administrative decision is supported by substantial evidence and should therefore be affirmed. See doc. no. 15 ("Comm'r's Br.").

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to

4

determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.   DISCUSSION

Plaintiff bases his argument for remand primarily on the assertion the ALJ incorrectly found he had a moderate, rather than a marked, limitation in his ability to maintain concentration,

5

persistence, or pace. According to Plaintiff, the ALJ incorrectly determined only a moderate limitation in this area because he failed to properly evaluate the medical opinions in the record from consulting psychologists John C. Whitley, III, Ph.D., and Michael P. Rose, Ph.D., along with the opinions of state agency consultants Robert Brill, Ph.D., and Madena Gibson, M.D. Plaintiff maintains the proper finding of a marked limitation of this area of adaptive functioning, when combined with findings from the original opinion issued by the ALJ but vacated by the AC, shows he meets or equals Listing 12.05B and/or that no jobs exist that he could perform. The Court disagrees.

### A.     The Requirements for Satisfying Listing 12.05B

At step three of the evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014) (*per curiam*); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

"Intellectual disorder" under Listing 12.05 refers to "[s]ignificantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00H. "Adaptive functioning" is defined as how a claimant "learn[s] and use[s] conceptual, social, and practical skills in dealing with common life demands. It is [a claimant's] typical functioning at home and in the community, alone or among others." Id. § 12.00H(3); Tisdale v. Soc. Sec Admin., Comm'r, 806 F. App'x 704, 710 (11th Cir. 2020) (*per curiam*). Thus, Listing 12.05B requires certain IQ scores and significant deficits in adaptive functioning as evidenced by an extreme limitation in one, or marked limitation in two, of four designated areas of mental functioning, as well as demonstration the disorder began prior to age 22. Tisdale, 806 F. App'x at 707; Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 768 (11th Cir. 2012) (*per curiam*). The four areas of mental functioning include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself." Pinckney v. Comm'r of Soc. Sec., 853 F. App'x 347, 349 (11th Cir. 2021) (*per curiam*) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B(2)).

> The Social Security Regulations elaborate the areas of mental functioning relevant to the adaptive functioning determination as follows. *Id.* § 12.00(E). Understanding, remembering, or applying information refers to the claimant's abilities to learn, recall, and use information to perform work activities, e.g., understanding and learning terms, instructions, and procedures; following one- or two-step oral instructions to carry out a task; and describing work activity to someone else. Interacting with others refers to the claimant's abilities to relate to and work with supervisors, co-workers, and the public, e.g., cooperating with others, asking for help when needed, initiating or sustaining conversation, and understanding and responding to social cues. Concentrating, persisting, or maintaining pace refers to the claimant's abilities to focus attention on work activities and stay on task at a sustained rate, e.g., initiating and performing a task, completing tasks in a timely manner, and sustaining an ordinary routine and regular attendance at work. Finally, adapting or managing oneself refers to the claimant's abilities to regulate

emotions, control behavior, and maintain well-being in a work setting, e.g., responding to demands, making plans independently of others, and maintaining personal hygiene and attire appropriate to a work setting.

Id. at 350 (citations omitted). Relevant here, a claimant has a moderate limitation if "functioning in th[e] area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2)(c). A claimant has a marked limitation if "functioning in th[e] area independently, effectively, and on a sustained basis is seriously limited." Id. § 12.00F(2)(d).

  **B.**  **The Administrative Decision Is Supported by Substantial Evidence**

    **1.**  **Analysis of Medical Opinions Related to Concentration, Persistence or Pace**

For claims filed prior to March 27, 2017, when considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (*per curiam*) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). Additionally, under the pre-2017 regulations, the opinions of examining physicians were given more weight than non-examining physicians and the opinions of treating physicians were given more weight than non-treating physicians. See 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at

8

\*1, 2 (July 2, 1996), rescinded eff. Mar. 27, 2017; see also 20 C.F.R. §§ 404.1527(d) and 416.927(d).

Here, Dr. Whitley performed his one-time examination on January 23, 2017. R. 448. He determined Plaintiff's full scale IQ of 57 was a valid estimation of Plaintiff's abilities and diagnosed Plaintiff with "Intellectual Developmental Disorder, Mild Range Versus Borderline Intellectual Functioning." R. 451-52. Dr. Whitley also identified Plaintiff's eleven-year work history as showing an ability to multitask and follow at least a two-step work task. R. 452. He also opined Plaintiff could tolerate and manage the demands and pressures of an eight-hour work day with simple and basis work directions. R. 452. Dr. Whitley further reported Plaintiff can manage his own appointments and schedules, attends church weekly, cooks meals and cleans the kitchen, mops, vacuums, washes and folds clothes, takes out the trash, shops for his own food and hygiene products, and obtained his driver's license without assistance. R. 449-50.

Nearly one year and ten months after Dr. Whitley performed his one-time examination, Dr. Rose also performed one-time examination on November 1, 2018. R. 454. Dr. Rose also noted Plaintiff's over ten-year work history and that he left his job making desserts because of business renovations, not because he was fired or otherwise unable to handle the work. R. 454-55. Dr. Rose also recounted Plaintiff's ability to perform the numerous chores previously identified to Dr. Whitley. R. 455. However, Dr. Rose also questioned Plaintiff's effort during the mental testing, noting test results indicated intentional bias, Plaintiff's lack of obvious reaction to his many failures during testing, and lack of effort to guess or improve a response after additional questioning. R. 455-57. Dr. Rose diagnosed borderline intellectual functioning and opined Plaintiff could understand and carry out simple, one or two-step

9

instructions, while maintaining adequate focus and attention for an extended period of time. Although Plaintiff would have a marked impairment for comprehending and carrying out complex job responsibilities, he could perform repetitive unskilled work with supervision. R. 457. Plaintiff could tolerate the everyday stresses of most work places, and his prognosis for maintaining full time employment was "fair to good." R. 458.

The state agency consultants, Drs. Brill and Gibson, reviewed Plaintiff's records in March and April of 20107, respectively. R. 108, 113, 119, 126, 129, 134. As they reviewed the records in 2017, they did not have the benefit of Dr. Rose's examination from 2018. As the Commissioner explains, Drs. Brill and Gibson noted a "marked" limitation in an ability to concentrate, persist, or maintain pace in the summary section of their evaluations, (R. 102, 125-26), a section which serves as a worksheet in the evaluation process but does not constitute an RFC assessment. Comm'r's Br., pp. 6-7 (citing Program Operations Manual System ("POMS") DI § 24510.060(B)(2), 2001 WL 1933367 (SSA)). The specific findings of the state agency consultants as stated by Dr. Brill and confirmed by Dr. Gibson after reviewing Dr. Whitley's but not Dr. Rose's as yet to be performed examination:

> Despite the IQ score in the Intellectual Disability range, the claimant shows better than expected adaptive functioning seen in the ability to relate in an appropriate fashion, able to acquire a job, and his ten-year work as a cook. The claimant has the [RFC] consistent with simple basic work activities that can [b]e learned in up to one month. The claimant will need a setting with reduced contact with supervisors, coworkers, and the public.

R. 106, 116, 125-26. There was no "finding" of a marked limitation. Moreover, even though the ALJ gave little weight to the opinions of the state agency consultants in light of the opinions of examining Drs. Whitley and Rose, as well as other record evidence such as a ten-

year work history and Plaintiff's own denial of significant psychological issues, (R. 51), the RFC accounted for simple, one to two-step work.

The ALJ thoroughly reviewed all of these records in his written decision, concluding Plaintiff had moderate limitations in the first three of four mental functioning categories set forth above, and a mild limitation in adapting or managing oneself.[2] R. 47-49, 50-52. The ALJ gave great weight to the opinions of both Drs. Whitley and Rose, affirming Plaintiff had borderline intellectual functioning. R. 50, 51-52. In rejecting more than a moderate limitation in concentration, persistence, or maintaining pace, the ALJ detailed Plaintiff's daily activities requiring concentration, including a ten-year job with one employer that ended because of business renovation not an inability to perform the work, watching movies, and displaying an appropriate attention span during both consultative examinations. R. 48; see also R. 50. All of these are acceptable characteristics for rejecting marked limitations in this category of adaptive functioning. See Tisdale, 806 F. App'x at 709.

Plaintiff complains the ALJ should have accepted or rejected Dr. Rose's opinion in toto, (Pl.'s Br., p. 12), but he offers no legal authority in support of his position. The Court is not surprised, as the Eleventh Circuit has explained:

> . . . [N]othing in the relevant regulations requires ALJs to apply an all-or-nothing approach when assessing a medical source's opinions. The regulations define a "medical opinion" simply as multiple statements from a medical source that reflects a judgment about the claimant's impairments. A medical source can

---

[2] The ALJ explained the limitations in the "paragraph B" criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps two and three, and the mental RFC assessment employed at steps four and five of the sequential process requires a more detailed assessment. R. 49. He then stated his RFC assessment reflected the degree of limitation in his "paragraph B" mental function analysis. Id. As the RFC analysis has a detailed discussion of the opinions of Drs. Brill and Gibson, (R. 51), the Court rejects any suggestion the ALJ was unaware or did not consider the opinions of these state agency consultants in his assessment of Plaintiff's mental functioning.

>provide multiple statements regarding a claimant's impairments, and the weight to be afforded each a medical source's opinions may differ based on the factors set forth in § 404.1527(c).

Hand v. Soc. Sec. Admin., Comm'r, 786 F. App'x 220, 225-26 (11th Cir. 2019) (*per curiam*) (citations omitted).

As cited above, the ALJ justified the portions of each consultative opinion he accepted or rejected with citation to other evidence of record. Plaintiff's argument the ALJ failed to mention the opinion of Dr. Whitley when assessing Dr. Rose's opinion or to otherwise explain the decision to give little weight to the opinions of Drs. Brill and Gibson fails, as the ALJ cited Dr. Whitley's examination report in the specific discussion of a moderate limitation in concentration, persistence or maintaining pace based on Dr. Rose's opinion, (R. 48 (citing Ex. 1F)). Moreover, contrary to Plaintiff's suggestion, (Pl.'s Br., p. 8), the ALJ included a detailed paragraph of reasons for rejecting the more severe restrictions suggested by Drs. Brill and Gibson, including citation to relevant portions of the examinations of Drs. Whitley and Rose, recognition they did not examine Plaintiff, only his records, Plaintiff's own denial of significant psychological issues impeding his ability to work, and Plaintiff's work history. R. 51.

This Court's job is not to review the administrative record *de novo*, but rather is to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant. See Crawford, 363 F.3d at 1158-59. That a different result is *possible*, does not mean the Commissioner's decision must be reversed. "Concentrating, persisting, or maintaining pace refers to the claimant's abilities to focus attention on work activities and state on task at a sustained rate, e.g., initiating and performing a task, completing tasks in a timely manner, and sustaining an ordinary routine and regular attendance at work. Pinckney, 853 F. App'x at 350

12

(citation omitted).  The ALJ explained, with detailed record references, why he determined Plaintiff had only a moderate limitation in this area of mental functioning, and Plaintiff points to nothing showing the record required the ALJ to find Plaintiff was "seriously limited" in his ability to function in this area "independently, effectively, and on a sustained basis" such that a finding of a marked limitation was required.  20 C.F.R Pt. 404, Subpt. P, App. 1, § 12.00F(2)(d).

Plaintiff further contends the ALJ erred in finding a moderate rather than a marked limitation in this area resulted in a subsequent error at step five of the evaluation process because the VE testified no jobs would exist if an individual had a marked limitation in his ability to concentrate, persist, or maintain pace such that he would be off task ten percent of the time.  Pl.'s Br., pp. 7-8.  Thus, goes the argument, because the ALJ should have found a marked limitation in this area of mental functioning, and such a marked limitation eliminates the jobs identified by the VE and relied upon by the ALJ,  the administrative decision is not supported by substantial evidence.  The argument fails because it is based on the now-rejected argument the ALJ erred in finding only a moderate limitation in concentration, persistence, or pace.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence.  McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

As discussed above, the ALJ's reasoning for a moderate limitation in concentration, persistence, or maintaining pace is supported by substantial evidence. Thus, the VE's response to a hypothetical concerning characteristics that were determined not to be supported by the record is not case determinative, as suggested by Plaintiff. The characteristics of the person in the hypothetical presented by the ALJ to the VE incorporated the supported limitations in Plaintiff's RFC, including *inter alia* performance of (1) one to two-step verbal instructions, (2) simple, routine and repetitive tasks with highly limited and infrequent changes to his duties and schedule, and (3) in a job without a high-paced or high-production environment. R. 49, 66-67. Because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics as determined by the ALJ in formulating the RFC, the ALJ's reliance on the VE testimony was proper. See McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63.

    2.  **Step Three Analysis of Listing 12.05B**

Plaintiff's second argument relies entirely on the argument rejected above that the ALJ erred in determining Plaintiff did not have a marked limitation in concentration, persistence, and pace. As such, his second argument fails to form a valid basis for remand.

According to Plaintiff, Dr. Whitley's full-scale IQ score for Plaintiff of 57 satisfies the first requirement of Listing 12.05B, and the ALJ should not have given credence to Dr. Rose's

later-in-time, test scores that estimated a higher IQ score based on Plaintiff's intentional bias.[3] Pl.'s Br., pp. 9-10. Plaintiff contends the ALJ cannot rely on the less restrictive opinion of Dr. Rose over that of Dr. Whitley, as well as the opinions of Drs. Brill and Gibson who reviewed Dr. Whitley's report but not Dr. Rose's, because Dr. Rose himself called into question the validity of the results of the one-time examination based on Plaintiff's lack of effort and/or "intentional bias" during testing. As discussed above, the ALJ is not required to accept or reject every portion of a medical opinion. See Hand, 786 F. App'x at 225-26. Thus, simply because Dr. Rose questioned the validity of testing on Plaintiff because the Test of Memory Malingering (TOMM) revealed a "clear indication of intentional bias for a simple recognition test," (R. 457), does not mean the entirety of Dr. Rose's opinion - which took into account other factors such as work history, activities of daily living, and social functioning, (R. 455, 457-58) - must be discounted.

In any event, the IQ scores from Dr. Whitley - as well as the argument concerning manifestation before age 22 (Pl.'s Br., pp. 12-13) - are red herrings because even if the Court were to assume for the sake of argument Plaintiff satisfied two of the three Listing requirements, he does not satisfy the requirement of significant deficits in adaptive functioning as evidenced by an extreme limitation in one, or marked limitation in two, of four designated areas of mental functioning.[4] As he does not satisfy all the specified criteria, he has not met his

---

[3]The Court rejects any implication in Plaintiff's argument that a claimant may somehow obtain an immediate disqualification of a medical opinion because the doctor giving the opinion identifies poor effort or intentional bias. These types of observations are, of course, relevant to validity or misrepresentation of an alleged basis for disability.

[4]Moreover, in the context of mental disorders, the Eleventh Circuit has recognized that "a valid IQ score need not be conclusive of [intellectual disability] where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery v.

burden to show he meets or equals Listing 12.05B. See Sullivan, 493 U.S. at 530; Castle, 557 F. App'x at 852.

As an initial matter, the Court rejects Plaintiff's argument that a marked limitation in understanding, remembering, or applying information was established, and could not change, based on the ALJ's finding in his first opinion.[5] Pl.'s Br., p. 11. Although the ALJ determined Plaintiff had a marked limitation in this domain in the first decision, Plaintiff successfully sought review of that opinion. The remand order states the AC "vacates the hearing decision" and directs the ALJ to take "any further action needed to complete the administrative record and issue a new decision." R. 160-61. Plaintiff cites no legal authority supporting the proposition any portion of the original opinion must not change. Indeed, such a position is counter-intuitive to the point of seeking review from the AC. See also 20 C.F.R. § 404.955(a) (explaining ALJ decision binding *unless* review requested and granted by AC) & § 404.977(b) (explaining ALJ shall take any action order by AC on remand and may take any additional action not inconsistent with remand order).

---

Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[IQ] test results must be examined to assure consistency with daily activities and behavior"). As discussed in detail above, the ALJ also relied on Plaintiff's decade-long work history, weekly church attendance, following along with movies, and performance of myriad chores around the house as reported to the consultative examiners and recorded in hearing testimony in determining Plaintiff's mental capacity and functioning is not as low as argued for by Plaintiff. See, e.g., R. 47-49 (citing repeatedly Exs. 1F, 2F (consultative reports) and Plaintiff's hearing testimony)).

[5]The portion of Plaintiff's argument on this point suggesting the ALJ could not accept or reject certain portions of medical opinions has already been discussed and rejected in Part III(B)(1). Thus, the Court confines its analysis in this section to the argument a marked limitation was definitively established for understanding, remembering, or applying information once made in the ALJ's first decision.

On remand, the ALJ determined Plaintiff had only a moderate limitation in understanding, remembering, or applying information. R. 47-48. Plaintiff strenuously argues the change is not supported by substantial evidence because the ALJ reached a different conclusion based on the same evidence; in essence, he argues only the challenged portions of the first opinion can change on remand. Pl.'s Br., p. 11. The Court disagrees.

First, the Court rejects Plaintiff's contention that because the AC remanded for consideration of Dr. Brill's finding of a marked limitation in the ability to concentrate, persist, or maintain pace and noted that the ALJ's original decision found a marked limitation in interacting with others, Plaintiff must meet Listing 12.05. Pl.'s Br., p. 11. The ALJ did not "affirm" Dr. Brill's marked limitation opinion, as suggested by Plaintiff. Id. at 12. It merely noted Dr. Brill's opinion and explained the ALJ had erred in not evaluating that opinion. R. 160. As described above, upon remand, the ALJ, as directed, did review the opinion of Dr. Brill in light of the other evidence of record and describe why he afforded the opinion little weight. R. 51.

Second, while Plaintiff disagrees with the weight afforded to the medical opinions on remand, as discussed above, the ALJ adequately explained his reasons for accepting and rejecting certain portions of the medical opinions of record. Both Drs. Whitley and Rose opined Plaintiff could "multitask and follow at least 2-step work task(s)," (R. 452), and "had the ability to understand and carry out simple 1 or 2-step instructions," (R. 457). At best, non-examining Dr. Brill found a marked limitation in carrying out detailed instructions, (R. 104), but the RFC limited Plaintiff to simple one to two-step tasks. R. 49. This Court may not re-weigh the evidence. See Moore, 405 F.3d at 1211. Plaintiff points to nothing requiring the ALJ to find Plaintiff's ability to function in this area of understanding, remembering, applying information independently, effectively, and on a sustained basis is seriously limited. 20 C.F.R. Pt. 404,

17

Subpt. P, App. 1, § 12.00F(2)(d).  As discussed above, the ALJ was not bound by findings in his first opinion, and his decision to find only moderate a limitation in this area of functioning - as explained in the administrative decision and discussed herein - is supported by substantial evidence.

Moreover, as discussed in detail above, the ALJ's finding of only a moderate limitation in concentration, persistence, and pace is supported by substantial evidence.  For the sake of completeness, the Court also notes the AC mistakenly read the ALJ's original opinion as finding a marked limitation in interacting with others, (R. 160), as it clearly states Plaintiff had only a moderate limitation in that domain, (R.150).[6]  With no more than moderate limitations in any of the four designated areas of mental functioning, the ALJ's decision that Plaintiff did not meet or equal Listing 12.05B is supported by substantial evidence.

IV.     **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 29th day of March, 2022, at Augusta, Georgia.

_/s/ Brian K. Epps_
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[6] Plaintiff does not now challenge the moderate limitation in interacting with others.